IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

KATHRYN KELLY STEVENS, Trustee of
the Naylor Grandchildren's Trust, f/b/o   Civil Action No. G-05-566
NGN, et al.,

                    Plaintiffs,

v.

NEW BRIDGE PARTNERS, LLC, n/k/a
Victory Capital Management, Inc. and
McKINLEY CAPITAL MANAGEMENT,
INC.,

                    Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANT McKINLEY
CAPITAL MANAGEMENT'S OPPOSED MOTION TO DISMISS
FOR LACK OF VENUE PURSUANT TO RULE 12(c), OR,
ALTERNATIVELY, TRANSFER PURSUANT TO 28 U.S.C. § 1404(a).**

**I.
INTRODUCTION**

McKinley Capital Management, Inc. ("MCM"), has moved this Court to dismiss this case for lack of venue pursuant to Fed.R.Civ.P. Rule 12(c), or, alternatively, to transfer it to the District of Alaska pursuant to 28 U.S.C. § 1404(a). The Court should dismiss this action pursuant to Fed.R.Civ.P. 12(c) or transfer it pursuant to 28 U.S.C. § 1404(a) because the parties' contract, the April 14, 2000 Investment Advisory Agreement (IAA), under which Plaintiffs bring this case, Paragraph 12, selects Alaska as the "exclusive" forum for any action brought under the IAA, requires that this action be decided under Alaska law, and subjects Plaintiffs to personal jurisdiction in Alaska. IAA ¶ 12, First Amended Petition at 4-5, Ex. 2; MCM Answer, Ex. A, bates p. 000182.

Fed.R.Civ.P 12(c) dismissal or 28 U.S.C. § 1404(a) transfer is required under controlling and persuasive law. *See, e.g.*, Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9-11 (1972); International Software Systems, Inc. v. Amplicon, Inc., 77 F.3d 112 (5th Cir. 1996); Spradlin v. Lear Siegler Management Services Co., 926 F.2d 865 (9th Cir. 1991); LaFargue v. Union Pacific Railroad, 154 F.Supp.2d 1001 (S.D. Tex. 2001) (Kent, J.); Sabocuhan v. Geco-Prakla, 78 F. Supp.2d 603 (S.D. Tex. 1999) (Kent, J.).

The Naylor Grandchildren's Trust (the "Trust") brought this action against MCM under the IAA, alleging MCM's breach of the IAA. *See, e.g.*, First Amended Petition at 4-5. The Trust sued in the 405th Judicial District, Galveston County, Texas. MCM timely removed the case to this Court. Paragraph 12 of the IAA stipulates the parties' agreement that:

> This agreement shall be construed and interpreted in accordance with the laws of the State of Alaska (except for the choice-of-law provisions of such laws). The federal and state courts situated in the Third Judicial District at Anchorage, Alaska shall be the *exclusive* forum for any action brought under this agreement. By their signatures below, the parties hereby consent to the personal jurisdiction of such courts and waive any defense that such courts provide an inconvenient forum. [Emphasis supplied.]

Having contracted that Alaskan courts are "exclusively" where actions brought under the IAA "shall" be resolved and having waived any right to object that an Alaskan court is not a convenient forum, Plaintiffs cannot bring or prosecute this action in Texas. Plaintiffs should not be heard to oppose this Motion. Alaska law applies and the courts of Alaska have jurisdiction over Plaintiffs. Accordingly, the Court should dismiss or transfer this action.

## II.
## THE COURT SHOULD DISMISS OR TRANSFER THIS ACTION.

A. **This case should be dismissed for lack of venue because the forum selection clause places venue exclusively in Alaska.**

2

The rulings of this Court have routinely enforced forum selection clauses. *See, e.g.* LaFargue v. Union Pacific Railroad, 154 F.Supp. 1001 (S.D. Tex. 2001) (Kent, J.); Sabocuhan v. Geco-Prakla, 78 F. Supp.2d 603 (S.D. Tex. 1999) (Kent, J.); Schaff v. Sun Line Cruises, Inc., 999 F. Supp. 924 (S.D. Tex. 1998) (Kent, J.). This is consistent with the direction of the U.S. Supreme Court that forum selection clauses are *prima facie* valid and should be enforced. *See, e.g.,* M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9-11 (1972).

Dismissal under Fed.R.Civ.P. 12(c) is appropriate when the forum selection clause, like Paragraph 12 of the IAA, establishes that the parties agreed to litigate their disputes in a forum different from where the action is filed. *See* International Software Systems, Inc. v. Amplicon, 77 F.3d 112, 114 (5th Cir. 1996); Lambert v. Kysar, 983 F.2d 1110 (1st Cir. 1993); Spradlin v. Lear Siegler Management Services Co., 926 F.2d 865 (9th Cir. 1991); Zapada Marine Services v. O/Y Finnlines, Ltd., 571 F.2d 208 (5th Cir. 1978). The plaintiff must overcome a "heavy burden of proof" to show that the clause should not be enforced. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).

Paragraph 12 of the IAA controls. It is even stronger in its terms than were the forum selection clauses that underlay the above decisions. Paragraph 12 requires that Plaintiffs sue in Alaska "exclusively." Plaintiffs agreed Alaska is the convenient forum. The Alaskan courts have personal jurisdiction over Plaintiffs. Alaska law applies.[1] The conclusion that the case cannot proceed in Texas is clear. For the reasons set forth above, it is proper for this Court to dismiss this case for lack of venue pursuant to Fed.R.Civ.P. 12(c).

---

[1] Alaska law requires enforcement of forum selection clauses, adopting the test set out in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). *See* Volkswagenwerk, A. G. v. Klippan, GmbH, 611 P.2d 498 (Alaska 1980); Crowson v. Sealaska Corp., 705 P.2d 905 (Alaska 1985).

3

B.  **Alternatively, this Court should transfer this case to the District of Alaska.**

Alternatively, MCM's Motion should be granted to require a transfer of this case to the District of Alaska. In LaFargue v. Union Pacific Railroad, 154 F.Supp.2d 1001 (S.D. Tex. 2001) (Kent, J.), this Court (consistent with persuasive U.S. Supreme Court and Fifth Circuit authorities) held that in deciding a motion to transfer the court should consider, among other factors: The venue specified in the forum selection clause; the location of books and records; the place of the alleged wrong; the availability and convenience of witnesses and parties; the location of counsel; the cost of obtaining attendance of witnesses at trial and other trial expenses; the possibility of delay and prejudice if transfer is granted; and the Plaintiff's choice of forum.

The forum selection clause is to be given great weight. "Such a clause creates a *presumption* that the parties' interests are best served by transfer to the specified forum." (Emphasis supplied). LaFargue, 154 F.Supp.2d at 1005. *See* Brown v. Petroleum Helicopters, Inc., 347 F.Supp.2d 370, 373 (S.D. Tex. 2004) (Kent, J.).[2] Paragraph 12 contains an unambiguous forum selection clause that makes Alaska the "exclusive" forum, contains Plaintiffs' waiver of objection to Alaska being an inconvenient forum, requires the application of Alaska law, and subjects Plaintiffs to personal jurisdiction in Alaska for actions such as this arising under the IAA. Thus, what is at least a presumption attaches here, that the Court should transfer the case to the District of Alaska.

Once the presumption attaches the court then analyzes the other Section 1404(a) factors to determine if they overcome the presumption. LaFargue, 154 F.Supp.2d at 1005. The Court's consideration of the relevant Section 1404(a) factors on the record before the Court establishes

---

[2] "Enforcement of a forum selection clause can be mandatory if [the clause] clearly designates a particular forum as exclusive." Musser v. Damrow, 1996 WL 733196 (9th Cir. 1996).

4

that the "other factors" support transfer. Those factors do not rebut the presumption that the case should be transferred.

There are sound reasons for the case to proceed in Alaska. MCM is an Alaska corporation duly formed for permissible purposes under Alaska law, with all fees currently paid, and is in good standing with the State of Alaska. MCM's principal place of business is Anchorage, Alaska and it has been incorporated and in business there since 1991. Its business is managing investments on behalf of numerous institutional and retail clients located throughout the United States and elsewhere. MCM's facility is located in Anchorage, Alaska and over 90% of its employees are physically located in Anchorage, Alaska. All of MCM's books and records are in Alaska and its management is located in Alaska. Its General Counsel, J.L. McCarey, resides and practices in Anchorage, Alaska. Ex. 1 to Motion, Affidavit of Diane M. Wilke, Executive Vice President and Chief Operations Officer of MCM ¶¶ 2, 3, 10 (Nov. 18, 2005) (hereinafter Wilke Aff.). Conversely, MCM has never conducted any of its official corporate activities within the State of Texas, it maintains no books and records within the State of Texas, it has never conducted any directors or officers' meetings in the State of Texas, and it has never owned real or personal property in the State of Texas. Wilke Aff. ¶ 4.

MCM had no contact with the Naylor Children's Trust (the Trust) prior to the Trust's entering into the IAA on April 14, 2000. The Trust's retail investment account with MCM was set up as a result of the dealings of a Morgan Stanley/Dean Witter broker, Robert Hardcastle, with the Trust. MCM provided the Trust with no information directly that led to the Trust's signing the IAA. All information, if any, the Trust received about MCM prior to signing the IAA came from Hardcastle. MCM did not employ or retain Hardcastle in any capacity. Wilke Aff. ¶ 5.

The Trust's account was an All Cap Growth Retail account. MCM held and administered the Trust's account in the ordinary course of MCM's doing business in Alaska. MCM's investment portfolios are managed by a team of investment professionals residing in Alaska. The MCM employee who primarily was involved in managing the Trust's account (Alex Slivka), lives in Anchorage. All MCM investment activity, administration and operations having anything to do with the handling of the Trust's account and all relevant investment decisions occurred in Alaska (as was the case for all of MCM's clients' accounts). Wilke Aff. ¶¶ 6, 7, 10.

Wilke, MCM's Executive Vice-President and Chief Operating Officer, signed the IAA on behalf of MCM. If the Trust had refused to agree to Paragraph 12 of the IAA, MCM would not have gone forward with the investor-client relationship and there would have been no contract, unless other terms protecting MCM could have been negotiated. Wilke requires this protection because, given that MCM's many hundreds of retail account clients over time have resided in many states, without a forum selection clause MCM otherwise could be faced with having to defend retail investment account lawsuits in all of the states where MCM's retail clients have resided. This would be contrary to MCM's financial interests and contrary to its business interests. If this occurred it would impose an enormous financial burden on MCM and would disrupt its business. Wilke Aff. ¶ 10.

It is very important for MCM's business for it to know that the IAA will be construed or interpreted in accordance with the laws of the State of Alaska--those are the state laws MCM operates under and is familiar with. All of its witnesses on what investments were made and what investment decisions were made, and why, reside in Alaska and all of MCM's books and records relating to the Trust and the investments are in Alaska. If litigation arises under an IAA, with the forum selection clause the litigation is certain to be conducted in Alaska, where the

witnesses and documents reside and are economically and easily available for the company to defend itself. Wilke Aff. ¶ 10. Similarly, the IAA contracts such as the contract with the Trust contained a provision such as that in Paragraph 12 that "the parties hereby consent to the personal jurisdiction of [the Alaska] courts and waive any defense that such courts provide an inconvenient forum," because it is in MCM's business interest to be sure that its clients know that if there is a dispute under the IAA, the dispute would be resolved in Alaska. MCM wants to be sure the investor knows Alaska courts would have jurisdiction over them. Wilke Aff. ¶ 10.

Given the amount that the Trust had to invest initially with MCM (over $1.4 million), there were many dozens of alternatives to MCM and MCM's All Cap Growth Retail account that the Trust had available to it in 2000. The Trust chose to enter into the IAA with Paragraph 12 and thus is bound. Wilke Aff. ¶ 11.

Thus, the record establishes that each of the above factors and elements that this Court previously has considered in other transfer motions, and that the Fifth Circuit and the U.S. Supreme Court consider, favor transfer and support the presumption that the case should be transferred.

Furthermore, to the extent there is any "wrong" allegedly done here, the "place of the alleged wrong" (*see* LaFargue, supra) was Alaska, where the investment decisions and administrative decisions were made and operations conducted. Similarly, the books and records of MCM which are at issue are located in Alaska. The fact witnesses whose testimony are critical to deciding whether a "wrong" was committed are all located in Alaska. Trial in the state where they reside is a key factor. See LeBouef v. Gulf Operations, Inc., 20 F.Supp.2d 1057, 1060 (S.D. Tex. 1998) (Kent, J). MCM's management and its general counsel are located in Alaska. As shown, it would impose an enormous burden on MCM and disrupt its business if it

were required to have its key management and other investment witnesses available for trial and other proceedings in Texas, and would impose significant expense on it. The Plaintiffs stipulated they would not assert that Alaska was an inconvenient forum and they stipulated to the jurisdiction of Alaska courts over them. Moreover, Alaskan law will apply, and there is no good reason for this Court to be required to debate or determine what Alaska law is on the relevant issues--the District of Alaska, conversely, applies Alaskan law daily, as this Court applies Texas law daily. Additionally, there is nothing to suggest that any delay or prejudice would occur if the transfer is made to the District of Alaska.

Finally, the presence of a second defendant, New Bridge, is irrelevant to this analysis. New Bridge and MCM are not affiliated, and the Amended Petition seeks separate relief against them under separate contracts for separate investments and unrelated investment decisions. The two cases involve different witnesses relate to investment philosophy decisions and returns. It is therefore proper for this Court to sever the litigation against MCM and transfer MCM's portion of the case to Alaska, unless the Court dismisses outright. *See* LaFargue, supra.

## III.
## CONCLUSION

For the reasons set forth above, this Court should enter its Order enforcing the forum selection clause, either by dismissing this case or transferring this case to the District of Alaska. The Plaintiffs cannot meet the "heavy burden of proof" described by Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991) to set aside the forum selection clause.

WHEREFORE, for the reasons set forth above, Defendant McKinley Capital Management, Inc. respectfully requests that this Court dismiss this case for lack of venue pursuant to Paragraph 12 of the Investment Advisory Agreement, or, alternatively, transfer it.

McLEOD, ALEXANDER, POWEL
& APFFEL

By: *Douglas W Poole, by Anthony P Brown, by permission*
Douglas W. Poole
Attorny-in-Charge
Texas Bar No. 16115600
SDTX: 619
802 Rosenberg
P.O. Box 629
Galveston, TX 77553
Phone: (409) 763-2481

of Counsel

ATKINSON & THAL, P.C.

By: *Clifford Atkinson, by Anthony P Brown, by permission*
Clifford Atkinson
New Mexico Bar No. 106
201 Third Street, N.W., Suite 1850
Albuquerque, NM 87102
Phone: (505) 764-8111

*Attorneys for Defendant McKinley*
*Capital Management, Inc.*

## CERTIFICATE OF CONFERENCE

I certify my firm conferred with opposing counsel on Monday, November 21, 2005, regarding this motion and they were opposed.

_____
DOUGLAS W. POOLE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing pleading was served this 21st day of November, 2005 via first class mail:

Randall A. Pulman
Lance Hunter "Luke" Beshara
Pullman, Bresnahan & Pullen, LLP
6919 Blanco Road
San Antonio, Texas 78216

Dan Mitchell
John Osborn
Bernstein, Shur, Sawyer & Nelson
P.O. Box 9729
Portland, Maine 04104

Wade Porter
Matt Ryan
Allensworth & Porter, L.L.P.
620 Congress Avenue
Austin, Texas 78701

_____
For Douglas W. Poole